USDC IN/ND case 2:21-cv-00070-PPS-JEM   document 4   filed 01/25/21   page 1 of 15

45D05-2101-CT-000096    Filed: 1/25/2021 11:06 AM
USDC IN/ND case 2:21-cv-00070-document 1-1 filed 02/24/21   page 2 of 43   Clerk
Lake Superior Court, Civil Division                                       Lake County, Indiana

| | |
|---|---|
| STATE OF INDIANA ) | IN THE LAKE CIRCUIT/SUPERIOR COURT |
| ) | |
| COUNTY OF LAKE ) | _____, INDIANA |
| ) | |
| MARY SHANK, as Personal ) | |
| Representative of the ESTATE OF ) | |
| MATTHEW SHANK, Deceased, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO: |
| ) | |
| OSCAR MARTINEZ, Sheriff of ) | |
| Lake County, Indiana, LAKE ) | |
| COUNTY SHERIFF'S ) | |
| DEPARTMENT; LAKE COUNTY, ) | |
| INDIANA; TOWN OF ST. JOHN; ) | |
| TOWN OF ST. JOHN ) | |
| ST. JOHN POLICE DEPARTMENT;) | |
| STEVEN FLORES, Chief of the ) | |
| Town of St. John Police Department ) | |
| Defendants. | |

## COMPLAINT FOR DAMAGES

## AND REQUEST FOR TRIAL BY JURY

Comes now Plaintiff MARY SHANK, as Personal Representative of the

Estate of MATTHEW SHANK, Deceased, and for his complaint

against Defendants, Oscar Martinez, as Sheriff of Lake County, Indiana,

individually and in his official capacity; the Lake County (Ind.) Sheriffs

Department; and Lake County, Indiana and Town of St. John,  St. John Police Department and

Chief Steven Flores, St. John Police Department.

Introduction

1. This is an action resulting from the wrongful death of Matthew A. Shank, while he was in the custody of the Lake County Sheriff's Department at the Lake County Jail ("Jail") in Lake, Indiana as a pretrial detainee.

<u>Parties</u>

2. Plaintiff, MARY SHANK, is the duly appointed personal representative of the Estate of MATTHEW SHANK, Deceased, now pending in the Lake County (Ind.) Superior Court as Cause No. 45D11-2007-ES-000132 of such Court.

3. At the time of his death, MATTHEW SHANK ("Matthew") was an adult person who was a prisoner confined to the Lake County Jail ("Jail") in Lake County, Indiana.

4. Defendant Sheriff Oscar Martinez ("Sheriff Martinez") is and was at all times mentioned herein, the duly elected Sheriff of Lake County, Indiana. He is charged by law with "tak[ing] care of the county jail and the prisoners there." Ind. Code S 36-2-13-5(7). He is being sued in his individual and" official capacities.

5. Sheriff Martinez and Defendant, the Lake County Sheriff's Department ("Department"), are responsible for administering the Jail and for making, overseeing and implementing the policies, procedures, practices and customs challenged herein relating to the operation of the Jail.

6. Sheriff Martinez and the Department are also responsible for the supervision, training and hiring of persons, agents and employees working within and without the Department, including Deputy Sheriffs and medical providers.

7. Sheriff Martinez is and was also responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to USDC IN/ND case 3:16-cv 00190-RLM document 30 filed 03/15/1-7 page 4-19 to which the acts and omissions of the employees and agents of the Department alleged herein were committed.

8. Defendant Chief Steven Flores ("Chief Flores") is and was at all times mentioned herein, the duly appointed Chief of the St. John Police Department. He is charged by law with "tak[ing] care of the county jail and the prisoners there." Ind. Code S 36-2-13-5(7). He is being sued in his individual and" official capacities.

9. Chief Flores and Defendant, the Town of St. John Police Department ("St. John Department"), are responsible for administering, making, overseeing and implementing the policies, procedures, practices and customs challenged herein relating to the operation of the St. John Police Department.

10. Chief Steven Flores and the St. John Police Department are also responsible for the supervision, training and hiring of persons, agents and employees working within and without the Department, including officers of the St. John Police Department.

11. Chief Flores is and was also responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to USDC IN/ND case 3:16-cv 00190-RLM document 30 filed 03/15/1-7 page 4-19 to which the acts and omissions of the employees and agents of the Department alleged herein were committed.

12. In doing acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and or under color of 1aw.

13. Due to the acts and or omissions alleged herein, Defendants, and each of them acted as the agent, servant and employee, any f or acted in concert with each of the other Defendants herein.

## Jurisdiction and Venue

14. The Court has concurrent jurisdiction over this action pursuant to Indiana State Law and U.S. Constitution, 28 U.S.C. S 1331 and 42 U.S.C. S 1983.

15. Pursuant to 28 U.S.S 1362 and Indiana Law, this court has supplemental jurisdiction to redress Matthew's wrongful death and survival action under Indiana state law.

16. Venue is proper in this judicial district pursuant to 2(g)1391 and 42 U.S.C. S 1983 because the alleged violations of Matthew's constitutional rights took place here, Lake County, Indiana.

## Preliminary Allegations

17. Matthew Shank, then age 37, was arrested by Neil Olson, St. John Police Department, after he was involved in an automobile accident on June 19, 2020, in Crete, Illinois.

18. After the arrest by Officer Neil Olson, Matthew was charged with Driving While Suspended-HTV and possession of Hypodermic Needle, 45G02-2006-F6-001332.

19. Matthew, while speaking with Officer Neil Olson, indicated that he, Matthew Shank, had overdosed on Heroin approximately 2 hours prior to the stop by Officer Neil Olson.

20. Matthew also advised Officer Neil Olson that he, Matthew Shank, had gained consciousness after his friend had previously administered Narcan 3 times to Matthew, prior to the stop by Officer, Neil Olson.

21. Upon the consent of Matthew, Officer Olson, searched Matthew's Nissan, Officer Neil Olson, found 2 uncapped syringes, and two empty glass bottles, inside a plastic baggie.

22. Matthew was then transported by Deputy Neil Olson, St. John, Police Department to the Lake County Jail.

23. Matthew went through the intake process at the Lake County Jail and provided information regarding the status of his health. In the early morning of June 20, 2020, Matthew advised Lake County Jail employees that he was subject to seizures, was going through heroin withdraw.

24. That on June 20, 2020, it was reported to Methodist Hospital that Matthew was last seen at the jail at 8 am.

25. That it was indicated that in the Transport of Lake County Jail Inmate for Hospital Evaluation, that at 11:40 A.M., CPR was administered to Matthew Shank.

26. That on June 20, 2019, at 11:31 am., the Lake County Jail called the Crown Point Fire & Rescue, Station 15, that there was an unresponsive male (Matthew Shank).

27. At 11:37, A.M. the Crown Point Fire & Rescue, found Matthew Shank, was lying spline in his jail cell, on the second floor of the Lake County Jail.

28. Upon arrival, it was noted to the Crown Point Fire & Rescue personal that Matthew was last seen at 8:00 A.M. and vomiting was observed near Matthew's mouth.

29. Matthew Shank, arrived at Methodist Hospital, by Crown Point Ambulance Service, with EMT Luces administering CPR to Matthew Shank, upon presentment to said hospital.

30. Prior to presentment to the aforementioned hospital, EMT Lucas indicated that Matthew was previously provided "CPR by jail staff, 5 Epis, 1 amp biarb, and 2 mg of Narcan, prior to arrival to Lake County Jail."

31. Per EMS, it received the call for service for Matthew at 11:31 am, from Lake County Jail.

32. Upon arrival at the Lake County Jail, at approximately 12:06, P.M., Matthew Shank, was asystole, (flatlined), upon transport to Methodist Hospital, Merrillville, Indiana.

33. Matthew was administered 5 rounds of Epi by the Methodist Hospital staff.

34. At 12:09 P.M., Matthew Shank, was pronounced dead.

35. It was communicated to Methodist Hospital, that Matthew's down time was 37 minutes and he had motted (colored) skin.

36. At 2:27 p.m., the coroner had taken Matthew Shank, from Methodist Hospital, Merrillville, Indiana.

37. At the time of Matthew's arrest and incarceration, the Jail had a

policy gerning intoxicated intakes. Anyone with a was to be sent to the emergency room for medical clearance. Further, before the detainee would be accepted into the Jail, there had to be

documentation presented of medical clearance.

38. Upon information and belief, no one ever sought medical clearance for Matthew to be incarcerated rather than hospitalized.

39. Matthew spent the rest of June 20, 2019, at the Jail, locked in Cell, which was not equipped with a surveillance camera.

40. That on the morning of June 20, 2019, between 8 A.M. and 11:37 A./M., sometime prior to Matthew suffered a seizure and/or asphyxia and/or Fentanyl overdose which was not noticed by Jail personnel monitoring Matthew's cell.

41. From the time Matthew suffered the first seizure and/or asphyxia and/or Fentanyl overdose and/or until she was discovered in his cell, at approximately 11:37 A.M., a.m. no staff of the Jail and/or Sheriff s Department checked on Matthew. Uponinformation and belief, Matthew laid in the same position, face down on a mat on his floor for over three and one-half hours without movement.

42. An autopsy determined that Matthew died of asphyxia and fentanyl overdose

43. Matthew experienced pain and suffering as he struggled to deal with the physical ramifications from withdrawal, asphyxia and fentanyl overdose

44. At the time of her death, Matthew was survived by his mother, Mary Kay Shank and brother, Daniel Shank.

45. Prior to Matthew's death, there had not yet been judicial determination made regarding whether there was probable cause to support the charges against his will.

46. Prior to his death, defendants failed to have Matthew examined by a physician or other qualified medical personnel, nor was he transported to a hospital for medical care.

47. Upon information and belief, there was never a blood test of Matthew, nor was the Jail contacted to inform it that Matthew's heroin exposure was at a dangerous and life-threatening level.

48. Sheriff Martinez is a public official, and the Department is a public entity, as is Lake County. They are sued under Title 42 U.S.C. g1983 for violations of the Fourth Amendment of the United States Constitution and Indiana state law for the acts and omissions of the individual defendants, and each of them, who at the time they caused Matthew Shank's injuries, damages and death were duly appointed, qualified and acting officers, employees, and/or agents of Sheriff Martinez and/or the Department acting within the course and scope of their employment and or agency.

49. Plaintiff alleges that the conduct of each Defendant deprived MATTHEW SHANK of his constitutional rights to life and medical care for his serious but treatable medical needs while in custody at the Jail, and caused MATTHEW SHANK to suffer grievous harm, emotional and physical injuries prior to his death, and ultimately caused his death while he was in the custody of Defendants.

50. Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing

to initiate and maintain adequate training, supervision and staffing with deliberate indifference to Plaintiffs' rights, by failing to maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

51. Each of the defendants knew or should have known that the failure to adopt adequate policies or practices would have resulted in the harm to and death of Matthew Shank.

52. Plaintiff alleges on information and belief that the defendant members of the Department failed to follow the Department's policy regarding persons who had withdrawn from heroin, previously administered Narcan. Further, plaintiff maintains the defendants deliberately chose to not enact written policies, procedures or protocols concerning when and under what circumstances to provide pretrial detainees appropriate medical care and treatment when the detainee is going through withdrawal from heroin and has shared a history of seizures.

53. Plaintiff alleges upon information and belief that Defendants have allowed conditions at the Jail to deteriorate, causing an environment where health care is ignored, and detainee safety is disregarded.

54. Plaintiff alleges upon information and belief that all Defendants ordered, authorized, acquiesced in, tolerated, permitted, or maintained customs and usages permitting the other Defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages as

alleged herein. Alternatively, Defendants' conduct as alleged herein constitutes an unreasonable pattern of constitutional violations based either on a plan by Defendants or on Defendants' indifference or reckless disregard of the safety, security, and rights of Plaintiffs decedent.

55. Detention and correctional facilities have a constitutional obligation to reasonably respond to the medical needs of arrestees who have not yet had a judicial determination regarding probable cause.

56. The Defendant Sheriff Martinez and the Lake County Sheriffs deputies identified herein are responsible for Matthew's death as the result of their intentional, willful, wanton, reckless and/or negligent acts and omissions, including but not limited to the failure to properly screen him when he arrived at the jail, failure to provide medical care and/or treatment to Matthew; failure to monitor, protect and provide safety for Matthew while she was detained; failure to monitor Matthew for heroin withdrawal syndrome; failure to timely contact emergency services to transport Matthew to the hospital; and the failure of supervisory officers, particularly Sheriff Martinez, to train and supervise their officers, deputies, and staff.

57. The failure of Sheriff Martinez and the Lake County Sheriff's deputies identified herein to adequately monitor Matthew for withdrawal symptoms, as well as the failure to provide Matthew with emergency medical treatment in a timely manner, demonstrates a total lack of regard for her right to be free from unnecessary and unlawful bodily harm.

58. The acts and omissions of Sheriff Martinez and the Lake County Sheriff's deputies identified herein were done willfully, wantonly, and maliciously, and with such reckless disregard of the consequences as to reveal a conscious and deliberate indifference to Matthew's serious medical condition which resulted in her untimely and tragic death.

59. Sheriff Martinez and the Lake County Sheriff's deputies identified herein are responsible for Matthew's death as the result of their intentional, willful, wanton, reckless and/or negligent acts and omissions, including but not limited to the failure to properly screen Matthew when he arrived at the jail, failure to provide medical care, and/or treatment to Matthew; failure to monitor, protect and provide safety withdrawal from heroin and other opiates; failure to timely contact emergency services to transport Matthew to the hospital; and the failure of Sheriff Martinez to train and supervise the officers, deputies, and staff.

60. Upon information and belief, there were no nurses working at the Jail the weekend when Matthew was brought into the jail and died. Sheriff Martinez and Lake County failed to hire nurses to work the weekends.

61. The constitutional obligation of all the Defendants to keep Matthew safe stems from the Fourth Amendment of the United States Constitution.

62. Matthew's death resulted from the wrongful acts of the Defendants.

FIRST CLAIM FOR RELIEF

63. Plaintiff realleges and incorporates by reference all the material allegations of Rhetorical Paragraphs 1-71.

64. Defendants' knowing failure and/or refusal to provide Matthew with reasonable medical care caused his death.

65. Defendants' failure to attempt in any way to ameliorate the pain and suffering that Matthew reported to the booking Deputy, and their refusal to provide Matthew with reasonable medical care is in violation of the Fourth Amendment of the United States Constitution.

66. That Deputy Neil Olson, St. John, Police Department, failed to provide basic care to Matthew by transporting Matthew to the Lake County Jail, rather than a medical facility.

SECOND CLAIM FOR RELIEF

67. Plaintiff realleges and incorporates by reference Paragraphs 1 through 61 as though fully set forth herein.

68. Plaintiff alleges, upon information and belief, that recklessly failed to properly train Jail personnel on the provision care to detainees.

69. Defendant Sheriff Martinez had a duty and obligation to train and supervise the jail personnel regarding: (a) how to recognize the signs and symptoms of alcohol withdrawal syndrome exhibited by detainees such as Matthew, and (b) how to timely and properly respond to detainees suffering from alcohol withdrawal syndrome, a potentially deadly condition requiring immediate medical care.

70. Defendant Chief Flores had a duty and obligation to train and supervise the jail personnel regarding: (a) how to recognize the signs and symptoms of alcohol withdrawal syndrome exhibited by detainees such as Matthew, and (b) how to timely and properly respond to detainees suffering from alcohol withdrawal syndrome, a potentially deadly condition requiring immediate medical care.

71. Defendants, and each of them, knew or should have known that the policy, custom or practice of failing to adequately train Jail staff would cause grievous injury or death to detainees, including Matthew, in violation of Matthew's constitutional rights.

72. The conduct of Defendants, and each of them, proximately caused Matthew to suffer personal injury, emotional distress and death as a result of the deprivation of her constitutional rights in violation of the Fourth Amendment of the United States Constitution.

## THIRD CLAIM FOR RELIEF

73. Plaintiff realleges and incorporates by reference Rhetorical Paragraphs 1 through 66 as though fully set forth herein.

74. Plaintiff alleges, upon information and belief, that Defendants, and each of them, maintained a policy, custom or practice of denying prisoners access to medical care.

75. Defendants, and each of them, knew or should have known that the policy, custom or practice of denying prisoners access to medical care would cause grievous injury or death to detainees, including Matthew, in violation of her constitutional rights.

76. The conduct of Defendants, and each of them, proximately caused Matthew to suffer personal injury, emotional distress and death as a result of the deprivation of Matthew's constitutional rights in violation of the Fourth Amendment of the United States Constitution.

### FOURTH CLAIM FOR RELIEF

77. Plaintiff realleges and incorporates by reference Rhetorical Paragraphs 1 through 70 as though fully set forth herein.

78. Defendant Sheriff Martinez had a duty and obligation to provide jail personnel with medical training and medical supervision. Defendants knew or should have known that the policy, custom or practice of denying medical training to jail personnel would cause grievous injury or death to detainees, including Matthew, in violation of his constitutional rights.

79. The conduct of Defendants proximately caused Matthew to suffer personal injury, emotional distress and death as a result of the deprivation of Matthew's constitutional rights in violation of the Fourth Amendment of the United States Constitution.

### FIFTH CLAIM FOR RELIEF

80. Plaintiff realleges and incorporates by reference all the material allegations of rhetorical Paragraphs 1-73.

81. Matthew's death was caused by the wrongful act of the Defendants, and each of them, therefore, Plaintiff is entitled to recover damages under Ind. Code 34-23-1-1.

<u>Request for Relief</u>

WHEREFORE, Plaintiff requests that this Court:

a.) For reasonable compensatory damages;

b.) For the costs of this action; and

c.) For all other just and proper relief.

<u>REQUEST FOR TRIAL BY JURY</u>

Plaintiff, by and through counsel, requests that this action be tried by a jury.

Respectfully submitted,

/s/ Andrew M. Yoder

Andrew M. Yoder, 21884-64

216 Main Street

Hobart, Indiana 46342

(219) 769-7900

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2021, a copy of this document was filed in the State of Indiana ECF/CMS.

/s/ Andrew M. Yoder