**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| MARY SHANK, ) | |
| as Personal Representative of the Estate ) | |
| of Matthew Shank, Deceased, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:21-CV-070-PPS |
| ) | |
| OSCAR MARTINEZ, Sheriff of Lake ) | |
| County, Indiana, et al., ) | |
| ) | |
| Defendants. ) | |

**<u>OPINION AND ORDER</u>**

After being arrested by the St. John Police Department, Matthew Shank was
brought to the Lake County Jail and tragically died a day later while in the custody of
the Lake County Sheriff. Lake County, the Sheriff, the jail's health care provider, and
related county defendants were all dismissed earlier in the case. [DE 85, DE 97.] The
remaining Defendants are all associated with the Town of St. John. They are the
arresting officer (Neil Olson), the Chief of Police (Steven Flores), the Town of St. John
Police Department, and the Town of St. John. For ease of reference, and unless
specificity requires otherwise, I will refer to these defendants collectively as the "St.
John Defendants." The St. John Defendants now seek summary judgment on Shank's
array of constitutional claims. Shank has responded and also filed a Motion to Strike.
For the reasons discussed below, the St. John Defendants' Motion for Summary
Judgment [DE 107] is GRANTED and Shank's Motion to Strike [DE 112] is GRANTED

in PART and DENIED in PART. The case will be dismissed with prejudice.

## Background[1]

At the outset, I will note that Shank takes issue with much of the evidence designated and relied upon by the St. John Defendants in their Statement of Material Facts. Shank has moved to strike Officer Olson's affidavit [DE 107-1], seeks to bar testimony that references the dashcam footage of Shank's arrest, alleges that certain evidence was not disclosed during discovery, and takes issue with the St. John Defendants' designation of additional affidavits because the individuals were not disclosed as witnesses. [*See* DE 112 at 3–14.] I will discuss Shank's challenges to this evidence at the outset of the opinion in a section dedicated to Shank's Motion to Strike. But first, let's discuss what happened.

On June 19, 2020, Matthew Shank was involved in a car accident with an off-duty police officer in Crete, Illinois. [DE 112 at 4[2].] Shank does not dispute a St. John Police Department report which states that Shank fled from the scene of the accident but was pursued by the off-duty officer he had hit in Illinois. [DE 112-1 at 4.] At around 11:14 p.m., Officer Neil Olson of the St. John Police Department received a call concerning the hit and run, as well as the pursuit by the off-duty officer. [*Id*.] (St. John, Indiana is just over the border from Crete, Illinois). Shortly after receiving the call,

---

[1] The factual record is muddied as a result of Shank's failure to comply with Northern District of Indiana Local Rule 56-1(b)(2), which required Shank to file a *separate* response to Defendants' Statement of Material Facts [DE 108]. Shank incorporated his response to Defendants' Statement of Material Facts within his Response to Defendants' Motion for Summary Judgment [DE 112], but this is expressly prohibited by Local Rule 56-1. Shank's inclusion of a motion to strike within his Response to Defendants' Motion for Summary is also improper. Local Rule 7-1(a) dictates that motions must be filed separately.

[2] Because of the confusing nature in which Shank incorporated his response to Defendants' Statement of Material Facts, I will cite to page numbers instead of paragraph numbers.

Officer Olson saw Shank's car and pulled it over. [*Id.*] Shank admitted to his involvement in the accident in Illinois and said that he fled because he was driving on a suspended license. [*Id.*] According to Officer Olson's report, he observed "2 uncapped syringes next to 2 small empty glass bottles" during a search of Shank's car. [*Id.*] In addition, Officer Olson observed that Shank was "slow to respond and slur[red] his words." [*Id.*] Shank informed Officer Olson that he was not currently high but had overdosed on heroin approximately two hours earlier and that a friend had administered Narcan three times before Shank regained consciousness. [*Id.*]

Officer Olson charged Shank with Driving While Suspended and Possession of a Hypodermic Syringe and transported Shank to the Lake County Jail. [DE 112 at 5, 7.] This approximately one hour interaction constitutes the entirety of Officer Olson's interaction with Shank. Lake County accepted Shank into the jail and retained custody over him for the remainder of the events in question. During booking, now just after midnight on June 20, 2020, Officer Olson states that he informed the intake officers at the jail about Shank's prior overdose and use of Narcan. [*Id.* at 8.] Shank argues that Defendants offer no proof to support this factual assertion other than Officer Olson's own affidavit. It's a perplexing argument; it's entirely unclear why Officer Olson's first-hand account of matters is not proper evidence. In any event, Olson's version of events is corroborated by the jail's intake records, which include a check mark on a box titled "[t]his inmate needs to be moved to the 4th Floor Medical after medical intake." [DE 107-3 at 1.] The form also has a written notation that says "detox." [*Id.*] Officer

3

Olson's account is further corroborated by the affidavit of Nurse Susan Ciesielski who was working at the Lake County Jail that night. Ciesielski testified that she conducted an "initial nursing intake screen" of Shank at the jail and was aware of his recent use of heroin. [DE 107-4 at ¶¶3, 6.] What's more, Shank admitted as much to the nurse. [*Id.*]

Several hours later, at approximately 8:30 a.m., Nurse Victoria Sallay, R.N., states in an affidavit that she visited Shank in Dayroom 4G (the Fourth-Floor Medical unit) to conduct a withdrawal symptom assessment. [DE 107-5 at ¶3.] Nurse Sallay states that Shank was "sleeping soundly on his side and did not rouse when I called out to him." [*Id.*] Nurse Sallay states that she concluded that Shank was not in any "acute distress", so she decided to postpone the withdrawal symptom assessment. [*Id.* at ¶4.]

Nurse Sallay then states she received an urgent call at 11:31 a.m. from a correctional officer who said that Shank appeared to be unresponsive and not breathing. [*Id.* at ¶5.] Nurse Sallay responded immediately and found Shank to be pale, without a discernible pulse, and not breathing. [*Id.* at ¶6.] She administered an AED (automatic electronic defibrillator) along with chest compressions, oxygen, and a medical "ambu" bag to provide rescue breaths, and she unsuccessfully attempted to introduce an IV into Shank's right arm. [*Id.* at ¶¶8–9.] Paramedics took over the resuscitation efforts when they arrived. [*Id.* at ¶10.] According to Shank's complaint, the paramedics transported Shank to Methodist Hospital at approximately 12:06 p.m. where he was pronounced dead at 12:09 p.m. [DE 27 ¶¶55–56.]

Mary Shank, as the personal representative of her son's estate, originally brought suit in Lake County Superior Court on January 25, 2021. [DE 4.] Shank sued Lake County, the Sheriff of Lake County, the Lake County Sheriff's Department, the Town of St. John, the St. John Police Department, and the Chief of the St. John Police Department. Defendant Lake County removed the state case to this court on February 24, 2021. [DE 1.] Shank then amended his complaint on December 8, 2021, to add additional defendants, including Officer Olson[3], Correctional Health Indiana, Inc. (the jail's healthcare provider), and an individual doctor and unknown employees associated with Correctional Health. [DE 27.] As noted above, Shank later dismissed the Lake County Defendants by agreed motion [DE 84, DE 85] and voluntarily dismissed the Correctional Health Defendants [DE 96, 97]. All that remains now are the St. John Defendants.

Shank's remaining claims against the St. John Defendants include: (1) a Fourteenth Amendment claim for inadequate medical care against Officer Olson, the arresting officer; (2) a Fourteenth Amendment claim for inadequate training and supervision of Officer Olson; (3) a Fourteenth Amendment *Monell* claim concerning the policy, custom, and practices of the St. John Police Department; (4) a state-law based wrongful death claim; and, according to Shank, (5) a separate Fourteenth Amendment claim of duty and obligation to provide medical training and supervision. The St. John Defendants argue that this fifth claim, listed as the "Fourth Claim for Relief" in Shank's

---

[3] The First Amended Complaint appears to erroneously refer interchangeably to Officer Neil Olson as Officer Neil Anderson throughout the document and case caption.

First Amended Complaint [DE 27], references the St. John Defendants in title only and not in the paragraphs that make up the substance of the claim. [DE 116 at 3.] Regardless, the St. John Defendants argue that this claim is "otherwise covered by [Shank's] other claims." [*Id.*] I agree, and Shank has not convincingly articulated otherwise. I therefore consider there to be four remaining claims pending against the St. John Defendants, the first four I listed in order above, and I will consider only those claims in this opinion.

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I must take the facts in the light most favorable to the party opposing the motion. *Fulk v. United Transp. Union*, 160 F.3d 405, 407 (7th Cir. 1998).

The party opposing a properly supported summary judgment motion may not rely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment is proper if the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial. *Massey v. Johnson*, 457 F.3d 711, 716 (7th

Cir. 2006).

## Motion to Strike

I'll begin with Shank's Motion to Strike included in his response to the St. John Defendants' Motion for Summary Judgment. Resolving the motion to strike at the outset will guide the factual allegations and materials that I will consider in analyzing the St. John Defendants' arguments for summary judgment.

Shank requests that I strike the four affidavits and their supporting documents that were included in the St. John Defendants' Motion for Summary Judgment as well as "any reference to this evidence so that the inadmissible and improperly disclosed materials are not taken into consideration." [DE 112 at 2.] This includes the affidavits of Officer Olson and Chief Flores of the St. John Police Department as well as Nurses Ciesielski and Sallay of Correctional Health. [DE 107-1, DE 107-2 at 1–2, DE 107-4, DE 107-5.] Shank's arguments in his motion to strike boil down to two claims: (1) that the St. John Defendants' evidence is inadmissible; and (2) that the St. John Defendants' evidence has been improperly disclosed. Shank also moves to strike the St. John Defendants' use of the dashcam video from Officer Olson's arrest of Shank.

The St. John Defendants filed a separate Reply to Shank's Motion to Strike, arguing that the affidavits comply with Rule 56(c)(4) in that they set out facts that would be admissible in evidence, were made upon personal knowledge, and demonstrate that the affiants are competent to testify as to the matters stated in their affidavits. [*See* DE 117 at 4–6.] Regarding the dashcam video, the St. John Defendants

argue that their inadvertence in failing to produce the video in the initial disclosures, pursuant to Rule 26(a), is ultimately irrelevant because Shank received the video in November 2023, at least two months prior to the close of discovery. [*Id.* at 7-8.]

Puzzlingly, Shank never once articulates the standard for a motion to strike or identifies a single case to support his arguments. "Motions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party." *Rodgers v. Gary Cmty. Sch. Corp.*, 167 F.Supp.3d 940, 948 (N.D. Ind. 2016). This makes sense given that Rule 56 provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Parties may oppose or support a motion for summary judgment "with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (emphasis in original). Thus, "the Court must determine whether the material can be presented in a form that would be admissible at trial, not whether the material is admissible in its present form." *Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *2 (N.D. Ill. Feb. 24, 2015).

I'll begin with Shank's request to strike the four affidavits that the St. John Defendants included in their Motion for Summary Judgment. Rule 56 requires that affidavits used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The requirement of "personal knowledge" permits "reasonable inferences", but those inferences must be "grounded in observation or other first-hand personal experience" and not "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (citation omitted). What's more, an allegation that an affidavit used to support summary judgment is "self-serving" is not enough on its own to strike the affidavit, as the Seventh Circuit has made the obvious point that "most affidavits submitted for these purposes are self-serving." *Id.*

Shank moves to strike "the Affidavit of Officer Olson in its entirety." [DE 112 at 5.] This broad request is frankly a little hard to swallow. Numerous paragraphs in Olson's affidavit are clearly based on his personal knowledge, set out facts that are admissible, and are facts Olson is competent to testify about. [*See* DE 107-1 at ¶¶1–6.]

Shank next moves to strike Olson's statements that Shank argues interpret the dashcam video of Shank's arrest as inadmissible under Indiana's Best Evidence Rule (Ind. R. Evid. 1002). The Federal Rules of Evidence govern this proceeding, so I will look to the analogous Federal Rule 1002. Rule 1002 states: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. But Rule 1002 is inapplicable to situations where a witness identifies a video as a "correct representation of events which he saw" or uses the video to "illustrate his testimony." Fed. R. Evid. 1002

advisory committee's note.

Shank seems to suggest that Officer Olson may not reference the dashcam video in his affidavit. This argument is a fundamental misapplication of Rule 1002. Olson states that he reviewed reports and video of his arrest of Shank to "refresh [his] recollection." [DE 107-1 at ¶3.] And I understand Olson's numerous references to the dashcam video to be illustrations of his testimony concerning his participation in Shank's arrest. [*Id*. at ¶¶7, 9–14, 17–18.] Rule 1002 would apply if Officer Olson had no independent knowledge of Shank's arrest and sought to testify about that arrest based only upon his review of the dashcam video. *Snyder v. Tiller*, No. 3:08–CV–00470 JD, 2010 WL 3522580, at *5 (N.D. Ind. Aug. 30, 2010) ("If, on the other hand, a witness were to seek to testify about events he only knows about from watching a video, the original video would be required unless an exception applied."). That is not the case here. Officer Olson is not seeking to prove the contents of the dashcam video. His affidavit includes testimony concerning events about which he has firsthand knowledge. That is permissible.

Shank also argues that Olson's statement in his affidavit that he informed the intake officers about Shank's use of Narcan and that Olson had no other verification of Shank's use of Narcan are inadmissible because there are no records or evidence to support this statement. [DE 112 at 8.] Again, this evidence is based on his personal knowledge, and it is something Olson could readily testify to at trial, with or without corroborating evidence. In short, there is simply no basis to strike this testimony.

Finally, Shank argues that Olson is not qualified to state that the Lake County Jail "had the ability to refuse intake of Shank" if they determined Shank needed immediate medical care. [DE 112 at 9.] It is true that Olson was not an employee of the Lake County Jail and may not be competent to testify to the jail's policies and procedures. But I don't think that is what's happening here. Olson is simply testifying about his experience when he brings arrestees to the Lake County Jail and whether the Jail would refuse intake of arrestees. In my own review of Olson's affidavit, I find that it satisfies the requirements of Rule 56(c)(4).

Shank challenges Chief Flores' affidavit on much the same grounds as Olson's affidavit. Shank first argues that it is improper for Flores to rely upon the St. John Police Department's General Order on Arrestee Processing and Transportation, attached as an exhibit to Flores' affidavit, because the St. John Defendants failed to disclose that document under Rule 26. [*Id*. at 14.]

Rule 26 of the Federal Rules of Civil Procedure states: "a party must, *without awaiting a discovery request*, provide to other parties: . . . a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Rule 26 also includes a duty to supplement these Rule 26(a) disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties

during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

The St. John Defendants do not respond to Shank's Rule 26(a) failure to disclose argument regarding the St. John Police Department General Orders 10.01 – 10.21 document, concerning Arrestee Processing and Transportation, that is attached to Flores' affidavit. [DE 107-2 at 3–18.] So, I will assume that document was never produced to Shank. In this circumstance, Rule 37 places limitations on the use of such undisclosed documents: "If a party fails to provide information or disclose a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply information on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In the absence of any attempt by the St. John Defendants to provide justification for this failure to disclose, I will strike this document from the record on summary judgment. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("[T]he [Rule 37(c)(1)] sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.").

Shank also argues that Flores' statement concerning his review of the dashcam video is an impermissible self-serving interpretation and is otherwise inadmissible. [DE 112 at 14.] I've already discussed that an allegation that an affidavit is self-serving is not a sufficient basis to strike on its own. *See Payne*, 337 F.3d at 772. But Shank's arguments concerning Flores' comments based on his review of the dashcam video hold water. Unlike Olson, Flores was not present at Shank's arrest. [DE 107-2 at ¶3 ("I

12

have no personal knowledge of the incidents and I had no interaction with
[Shank].").] Flores' comment that the video "shows Shank conducting himself in a
way that was responsive and appropriate" might be admissible if Flores had been
designated as an expert witness, which to my understanding, he was not. I will
therefore not consider Flores' affidavit in deciding the summary judgment motion.

This leaves the affidavits of Nurses Ciesielski and Sallay. [DE 107-5, DE 107-6.]
Shank argues that Ciesielski "was never disclosed as a witness by the Defendants and
the affidavit was prepared by a party that is no longer a party to this case", by which
Shank means the Correctional Health Defendants. [DE 112 at 13.] Shank asserts the
same arguments for Sallay and adds that their affidavits are prejudicial to Shank
because of the St. John Defendants "failure to provide several documents during
discovery." [*Id*. at 13–14.]

In response, the St. John Defendants note that the nurses' affidavits were
originally before the Court in the Correctional Health Defendants' prior motion for
summary judgment. [*See* DE 92-5, DE 92-6.] The St. John Defendants argue that they
"use [the nurses'] affidavits in the same way" as the now dismissed Correctional
Health Defendants and that the affidavits are based on the nurses' firsthand
interactions with Shank. [DE 117 at 5.] The St. John Defendants also argue that the
nurses are not expert witnesses and that documents produced in the St. John
Defendants' initial disclosures provided the names of the nurses to Shank. [*Id*. at 4–5.]

It's not clear to me what documents Shank claims have not been produced

during discovery for Nurses Ciesielski and Sallay. The documents cited in the St. John

Defendants Statement of Material Facts that relate to the nurses all include Bates

numbering. [*See* DE 108 at ¶¶34–39.] In fact, the St. John Defendants point to

numerous documents produced in initial disclosures to Shank that identify the two

nurses and their involvement in the intake process for Shank at the Lake County Jail.

[DE 117 at 5–6.]

I turn now to Shank's argument that the nurses were not disclosed as

witnesses. Shank appears to argue that the St. John Defendants did not include the

nurses in their Rule 26(a)(1)(A)(i) disclosures. But, as the St. John Defendants point

out, Shank received production of documents that identified the nurses' role in

Shank's processing at the jail. And there is no requirement that an affidavit used to

support a motion for summary judgment under Rule 56 must be made by a named

party to the lawsuit.

In sum, this is unlike situations in which courts have found that Rule 26(a) and

Rule 37 operate to prohibit the use of affidavits from undisclosed witnesses to support

summary judgment. *See Lavender v. Verizon New York Inc.*, 17-CV-6687(JS)(ARL), 2023

WL 1863245, at *10–11 (E.D.N.Y. Feb. 9, 2023). Here, regardless of whether the St. John

Defendants themselves included the nurses in their initial disclosures (that still is not

clear to me), I find that there is no prejudice to Shank. Shank had clear notice of the

involvement of these nurses and these exact affidavits have already been used in this

litigation. *See Cinclips, LLC v. Z Keepers, LLC*, 8:16–cv–1067–T–23JSS, 2017 WL 2869532

14

(M.D. Fla. July 5, 2017) (denying motion to strike based on Rule 26(a) failure to disclose argument because the witness' identity had otherwise been made known through discovery).

Shank's final request to strike relates to the dashcam footage of Shank's arrest. Shank argues that the St. John Defendants "failed to disclose the footage" as required by Rule 26. [DE 112 at 5–6.] The St. John Defendants are unsure whether their initial disclosures on August 2, 2021, included the video. [DE 117 at 7.] But the St. John Defendants point to their disclosure of the dashcam video on November 30, 2023, after a request by Shank's counsel, which they argued occurred prior to the close of discovery. [*Id.* at 7–8.] The St. John Defendants incorrectly cite Judge Martin's September 7, 2023, Order for the proposition that discovery had not concluded because while the expert discovery deadline was January 17, 2024, fact discovery ended on November 15, 2023. [DE 89.] Once again, this is a puzzling discovery dispute to come to light at this stage in the litigation now almost four years after Shank filed his complaint in state court. Regardless, I am convinced by the St. John Defendants' argument that Shank has not shown any harm in the St. John Defendants' untimely disclosure of the video. Absent a showing of any harm, I will exercise my discretion to deny Shank's motion to strike the dashcam video.

## Motion for Summary Judgment

### I.    Shank's § 1983 Claims Fail

The St. John Defendants argue that the doctrine of qualified immunity bars all of

Shank's federal law claims. Shank's remaining federal claims against the St. John

Defendants include: (1) a Fourteenth Amendment claim for inadequate medical care;

(2) a Fourteenth Amendment *Monell* claim for inadequate training and supervision;

and (3) other *Monell* claims.

Qualified immunity provides that "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982). "Qualified immunity 'gives government officials breathing room to make

reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or

those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546

(2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "[W]hether an official

protected by qualified immunity may be held personally liable for an allegedly

unlawful official action generally turns on the 'objective legal reasonableness' of the

action, assessed in light of the legal rules that were 'clearly established' at the time it

was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citation omitted).

Evaluation of a qualified immunity defense is a two-step inquiry: "(1) whether

the facts alleged or shown by the plaintiff establish a violation of a constitutional right,

and (2) if so, whether that right was clearly established at the time of the defendant's

alleged misconduct." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). I may

analyze these factors in any order. *Id.* "Although qualified immunity is an affirmative

defense, the plaintiff has the burden of defeating it once the defendants raise it." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). As I will discuss below, Shank has not put forth facts that show a violation of his constitutional rights for any of his federal claims.

### A.    Inadequate Medical Care Claim

A "defendant is liable for providing inadequate medical care if the defendant's response to the plaintiff's medical need is objectively unreasonable." *Smith v. Adams*, No. 3:18-cv-00019-SEB-MPB, 2019 WL 1542298, at *10 (S.D. Ind. Apr. 9, 2019), *aff'd*, 804 F.App'x 390 (7th Cir. 2020). The Seventh Circuit has articulated four factors to evaluate the objective reasonableness of the response to medical needs: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018).

Shank relies on *Estate of Perry v. Wenzel* to argue that the St. John Defendants violated Shank's constitutional right to medical care. In that case, a detainee informed officers he suffered from seizures, experienced numerous seizures while detained in jail and later at a hospital, was unable to walk or otherwise support himself, defecated

and urinated in his pants, and was affixed with a spit mask for hours even after it soaked through with blood. *Id*. at 446–451. After hours in custody and under the supervision of jail and city medical staff, correctional officers, and police officers, all of whom witnessed some or all of these symptoms of extreme medical distress, Perry died on the floor of a county criminal justice facility. *Id*. at 450–451.

The Seventh Circuit reversed the district court's grant of summary judgment in favor of the city and county defendants on Perry's inadequate medical care claims. *Id*. at 453–58. On appeal, the Seventh Circuit considered the first and second factors of an inadequate medical care claim: (1) whether the officer has notice of the detainee's medical needs and (2) the seriousness of the medical need. *Id*. at 453 (citing *Ortiz*, 656 F.3d at 530). The Seventh Circuit concluded that numerous factual disputes existed for both factors. Moreover, the Seventh Circuit proclaimed that by 2010 it had been clearly established that "the failure to take *any* action in light of a serious medical need" violated a pretrial detainee's constitutional right to adequate medical care *Id*. at 460 (emphasis in original).

Shank has not alleged facts anywhere near those that the Seventh Circuit in *Estate of Perry* found to have created questions of fact for an inadequate medical care claim. In interpreting the evidence in the light most favorable to Shank, I find that Officer Olson had notice of Shank's recent overdose and the fact that he was revived with Narcan. Olson also knew that Shank appeared to be slurring his words and that he was disoriented. But this is not enough to show that Shank had a sufficiently serious

medical need, or that Officer Olson had notice of any such need, at the time of his arrest to require *immediate* hospitalization.

Moreover, I am dubious of any analogy that Officer Olson failed to take *any* action in response to Shank's medical needs, the second part of the constitutional right recognized in *Estate of Perry*. Officer Olson promptly transported Shank to the Lake County Jail and informed the Lake County Jail staff of Shank's recent overdose. The jail records reflect that Shank was turned over to medical personnel at the jail and sent to the detox wing [DE 107-3 at 1]. In short, Officer Olson did all that he could to inform the jail personnel of Shank's medical needs. Shank also does not claim, or assert any facts to support, that he requested medical care from Officer Olson at the time of his arrest. In fact, the record reflects that Shank did not pass away for an additional eleven hours after Officer Olson's final interaction with Shank. I find that no reasonable juror could conclude that Officer Olson's actions were objectively unreasonable.

Because I find that there was no constitutional violation for inadequate medical care, a qualified immunity defense is not necessary. *See Flournoy v. City of Chicago*, 829 F.3d 869, 877 n.10 (7th Cir. 2016) ("The defendants alternatively argue that we should affirm based on qualified immunity. Because we uphold the jury's verdict that no constitutional violation occurred, we do not reach this alternative argument.").

Shank does not clearly articulate in his complaint whether, and if so, to what extent, his inadequate medical care claim applies to the remaining St. John Defendants in addition to Officer Olson. For example, Shank has not pled any facts to support the

participation of Chief Flores, the town of St. John, or the St. John Police Department. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) (holding that public employees and municipalities may be held liable for their own decisions and policies but are not liable under the doctrine of respondeat superior for the acts, decisions, and policies of other persons); *Gaston v. Ghosh*, 920 F.3d 493, 494-95 (7th Cir. 2019) (same and citing to *Iqbal*, 556 U.S. at 676-77). The St. John Defendants' request for summary judgment on Shank's inadequate medical care claim is granted.

**B. Inadequate Training and Supervision Claim**

Shank next asserts a Fourteenth Amendment claim for inadequate training and supervision of Officer Olson. Shank on the one hand argues that the St. John Defendants did not have a policy in place to address situations where officers encounter individuals who have overdosed while simultaneously, as discussed above, asking the Court to strike the St. John Defendants' designated evidence of a policy that concerns just that. I noted above that the St. John Defendants failed to provide any justification for their failure to produce the document titled General Orders 10.01 – 10.21 concerning Arrestee Processing and Transportation. [DE 107-2 at 3–18.] Accordingly, I will not consider this document for purposes of evaluating the St. John Defendants' request for summary judgment on Shank's inadequate training claim. *See* Fed. R. Civ. P. 37(c)(1).

A municipality or other local government may be liable under § 1983 when "action pursuant to official municipal policy" causes the constitutional deprivation.

*Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). This is referred to as a *Monell* claim. Shank's claim is premised upon a failure to train or supervise theory. The Supreme Court recognized that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But the Supreme Court noted that a municipality's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* Accordingly, a failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Deliberate indifference is a high bar, and it generally requires a plaintiff to provide evidence of "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 62. However, the Supreme Court has cautioned that "in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Board of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997).

The St. John Defendants, unsurprisingly, urge me to focus on their perception that Shank has provided no evidence of a pattern of constitutional violations by untrained St. John employees who encounter individuals who recently overdosed. [DE

109 at 9.] Shank argues, and I tend to agree, that "any police department should reasonably foresee that its officers will encounter situations where drug overdoses exist." [DE 112 at 18.] But this is where Shank's claim runs out of steam. Shank attempts to turn the pleading standard on its head to argue that the St. John Defendants presented no evidence that they had a policy to "protect the lives of arrestees and detainees who are or are likely to become unconscious or suffer in transport to a jail." [*Id*. at 19.] But this ignores that it is Shank's duty to assert facts that indicate a failure by the St. John Defendants to train or supervise employees, such as Officer Olson, on how to handle arrestees who recently overdosed.

Moreover, Shank's own definition of the purportedly missing policy or training concerning detainees who "are or are likely to be unconscious or suffer in transport to jail" doesn't squarely fit this situation. Officer Olson interacted with Shank for a total of approximately one hour, and Shank does not present any evidence that he was unconscious, likely to become unconscious, or was suffering from any other emergency medical issues while en route to the jail.

Shank's cite to the factually inapposite case of *Miranda v. County of Lake* does nothing to advance his claim. 900 F.3d 335 (7th Cir. 2018). In *Miranda*, the Seventh Circuit considered a failure to train claim in the context of a woman who died in custody after days of a water and hunger strike. *Id*. at 341–43. The estate of the deceased plaintiff, a foreign national, sued on a theory based on the "alleged failure to train Jail staff to notify detainees of their consular rights." *Id*. at 345. The Circuit

rejected this claim because the estate had pointed to neither evidence of a repeated violation of this policy or that the defendant had failed to act in the face of foreseeable violations. *Id*. at 345–46.

This case does not advance the ball for Shank. Shank's vague claim that Officer Olson failed to complete a full investigation under Indiana's criminal code related to DUIs or to recognize opioid overdoses ignores that Shank does nothing to flesh out his bare allegations that the St. John Defendants named in this claim, which appears limited to Chief Flores and to the St. John Police Department, were either aware of a repeated issue of processing and transporting detainees who recently overdosed or failed to equip Officer Olson with the tools to evaluate such detainees such as Shank. Accordingly, I grant summary judgment to the St. John Defendants on Shank's inadequate training and supervision claim.

### C.    Other *Monell* Policy, Custom, and Practice Claim

Shank's last federal claim is another *Monell* claim that the St. John Defendants "maintained a policy, custom or practice of denying prisoners access to medical care." [DE 27 at ¶95.] The Seventh Circuit has interpreted the language of *Monell* to support three types of actions that can support municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *First Midwest Bank Guardian of Estate of Laporta v. City of*

*Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citation omitted). Shank must also prove that the policy or custom demonstrates municipal fault by establishing that the municipality either took or directed action that "facially violates a federal right" or took action with "deliberate indifference" to Shank's constitutional rights. *Id*. at 986–87. Finally, Shank must prove that the St. John Defendants were the "moving force" behind the federal-rights violation by showing a "direct causal link" between the action and the violation of his constitutional rights. *Id*. at 987.

Shank has failed to present evidence to satisfy each step of the *Monell* claim analysis. Frankly, I have a hard time understanding how Shank applied any of the factors of a *Monell* claim. Shank claims there is no evidence that Olson advised jail medical staff about Shank's overdose or Narcan use and concludes, therefore, that "[t]he policies in the instant case clearly fail to protect the medical needs of pre-trial detainees." [DE 112 at 20.] Not only is this assertion refuted by the record, but this generalized allegation references no express policy or widespread custom, policy, practice, or a constitutional injury by a person with final policy making authority. Nor does this bare allegation provide any evidence that the St. John municipal defendants themselves directed unconstitutional action or acted with deliberate indifference. And there is no direct causal link to the municipal defendants. These rigorous requirements of culpability and causation exist for circumstances such as this to prevent "municipal liability [from] collaps[ing] *into respondeat superior* liability." *Board of County Com'rs of Bryan County, Okl.*, 520 U.S. at 415. I grant summary judgment in favor of the St. John

24

Defendants on Shank's *Monell* policy, practice, and custom claim.

**II.    Shank's State Law Claim Fails**

Shank's remaining claim is a wrongful death claim under Indiana law that seeks recovery of damages under Indiana Code §34-23-1-1. [DE 27 at ¶¶ 101–102.] Now that all federal claims have been dismissed, I recognize that I have the authority to relinquish jurisdiction over this remaining state law claim. *See* 28 U.S.C. §1367(c)(3). The decision to relinquish jurisdiction is left to my judgment and is reviewed for an abuse of discretion. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). Because the issue presented on the state law claim is straight-forward and there is little room for doubt, I will exercise my discretion and proceed to resolve the state law claim.

Under Indiana's wrongful death statute, the personal representative of the decedent may maintain an action for wrongful death against a defendant "[w]hen the death of [the decedent] is caused by the wrongful act or omission of [the defendant]." Ind. Code § 34-23-1-1. Shank asserts that "Matthew's death was caused by the negligent and wrongful acts of the [St. John Defendants]." [DE 27 at ¶ 102.] The St. John Defendants argue that they are immune from suit on Shank's wrongful death claim under the Indiana Tort Claims Act ("ITCA").

The ITCA, codified at Ind. Code. §34-13-3-3, provides immunity to government entities and employees acting within the scope of their employment for numerous categories of acts and omissions. The St. John Defendants cite one such protection from

suit for "[t]he adoption and enforcement of or failure to adopt or enforce: a law

(including rules and regulations) . . . unless the act of enforcement constitutes false

arrest or false imprisonment." *Id*. at §34-13-3-3(a)(8). This subsection of the ITCA is

commonly referred to as the "law enforcement immunity provision" and includes

"traditional law enforcement activities such as arrest and pursuit of suspects by

police." *Wilson v. Bedford Police Dep't*, 226 N.E.3d 250 (Table), 2023 WL 8827744, at *2

(Ind. Ct. App. Dec. 21, 2023). Accordingly, there is no question that Officer Olson was

acting within the scope of his employment when he arrested Shank. *Id*.; *see also Reiner v.

Dandurand*, 33 F.Supp.3d 1018, 1032 (N.D. Ind. 2014) ("The actions of pulling someone

over, arresting him, etc. are within the general scope of a police officer's authority

under the law.").

Shank's attempt to sidestep the ITCA by arguing summary judgment is rarely

appropriate in negligence cases is unpersuasive. While this is undoubtedly true in

ordinary negligence cases, this argument ignores the ITCA immunity defense raised by

the St. John Defendants. There are exceptions to ITCA immunity recognized under

Indiana law such as where the "conduct forming the basis of the wrongful death claim

is also conduct that is alleged to amount to the excessive use of force", but this

exception does not apply here. *See Wynn v. City of Indianapolis*, 496 F.Supp.3d 1224, 1239

(S.D. Ind. 2020). Moreover, the two exceptions listed in the law enforcement immunity

provision itself, false arrest and false imprisonment, are also inapplicable here.

Shank has not asserted any of the exceptions to ITCA immunity recognized

under Indiana law such as false arrest, false imprisonment, or excessive force. Accordingly, I find that the St. John Defendants are immune from suit on Shank's wrongful death claim. *See id.* at 1239 n.6 (recognizing that the ITCA applies to certain wrongful death claims); *Day v. City of Indianapolis*, 380 F. Supp. 3d 812, 829 (S.D. Ind. 2019), *rev'd and remanded on other grounds sub nom.*, *Day v. Wooten*, 947 F.3d 453 (7th Cir. 2020) (finding that the ITCA shielded officers from a wrongful death claim premised on negligence).

## Conclusion

For the aforementioned reasons, the Court:

(1) **GRANTS** the St. John Defendants' Motion for Summary Judgment [DE 107];

(2) **GRANTS IN PART and DENIES IN PART** Shank's Motion to Strike included in his response to the St. John Defendants' Motion for Summary Judgment [DE 112]; and

(3) **DIRECTS** the clerk to enter judgment in favor of Defendants Steven Flores, Neil Olson, the Town of St. John, Indiana, and the St. John Police Department and against Plaintiff Mary Shank and to **CLOSE** this case.

SO ORDERED.

ENTERED: January 16, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT